14946.　AVERA LOAN & INVESTMENT CO. *v.* NATIONAL SURETY COMPANY *et al.*

1. Under the broad powers given an auditor by section 5129 of the Civil Code of 1910, he may grant a nonsuit on the terms and conditions stated in section 5942 of the code.
2. Under the facts of this case the auditor did not err in granting a nonsuit to each of the defendants, and the judge of the superior court properly passed the following order: "It is considered, ordered, and adjudged that the motion to recommit be denied, and all exceptions of law and fact be and the same are hereby overruled, and a nonsuit is hereby granted in favor of the National Surety Company and George Beverly Walker."
3. (*a*) The judge properly taxed the auditor's fee against the Avera Loan & Investment Company.
(*b*) The judge erred in allowing the auditor a fee of $500.

DECIDED MAY 13, 1924.

Action on bond; from Bibb superior court—Judge Malcolm D. Jones. May 24, 1923.

Avera Loan & Investment Company sued National Surety Com-

pany and George Beverly Walker. The petition as amended alleged in part that the surety company was a corporation doing a fidelity-insurance business in this State, and that it and Walker were indebted to the plaintiff $4,000, by reason of the following facts: "On January 30, 1914, said George Beverly Walker and National Surety Company executed and delivered to your petitioner a contract of fidelity insurance whereby they jointly agreed to make good to your petitioner within sixty days after satisfactory proof thereof any loss not exceeding $4,000 which your petitioner might sustain by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion, or abstraction on the part of George Beverly Walker while employed in the service of your petitioner as an attorney in collecting notes and accounts, committed after the first day of February, 1914, and before the termination of said bond. A copy of said contract is hereto attached, marked Exhibit A, and by this reference made a part of this petition. By the payment of the premium charged by said National Surety Company said contract was continued in force until the first day of February, 1917. While said contract continued in force, to wit, between February 1, 1914, and February 1, 1917, said George Beverly Walker, while employed in the service of your petitioner as attorney in collecting notes and accounts, collected on notes and accounts of your petitioner, entrusted to him for collection, the sum of . . $3,438.52, which he has failed and refused to pay over to your petitioner upon demand. Whereupon petitioner sustained a loss to said amount by reason of acts of personal dishonesty, embezzlement, and wrongful conversion on the part of said George Beverly Walker. An itemized statement of the collections aforesaid is hereto attached, marked Exhibit B, and by this reference made a part of this petition, showing the names of the debtors, the principal, interest, the total amounts due from the [them?] respectively, the amounts collected from them respectively, the amounts of such collections remitted to petitioner, and the balance of such collections not paid over or accounted for to petitioner." Petitioner alleged also that it "did not have at the date of said contract any knowledge of said George Beverly Walker having been guilty of any act of personal dishonesty in any position in petitioner's service or in the service of any other person, firm, or corporation," and that when it did

ascertain that he had been guilty of such acts it promptly notified the surety company as provided in its contract with that company.

Each of the defendants filed a plea denying liability. Walker also pleaded that he had rendered certain services to plaintiff and had expended certain money for it and had overpaid it. This case was consolidated with that of Walker against Avera Loan and Investment Company "to the extent only of trying them together." The two cases were referred to an auditor, but this court is here concerned only with the case in which the Avera Loan and Investment Company is plaintiff. When the case reached the superior court after the auditor's report there was a motion to recommit, which was overruled. There were also exceptions both of law and of fact, and these were also overruled.

*B. J. Fowler, John R. L. Smith, Grady C. Harris,* for plaintiff.
*Jones, Park & Johnston, L. D. Moore, A. M. Lamar,* for defendants.

BLOODWORTH, J. (After stating the foregoing facts.)

To the statement of facts and the headnotes we will add only the following:

1. This case was submitted to an auditor "to investigate the same and pass upon *all questions of law not heretofore passed upon and all facts arising therein* in accordance with the law in such cases made and provided." (Italics ours.) The law "in such cases made and provided" is found in § 5129 of the Civil Code of 1910, and is as follows: "In all cases, unless modified by the order of appointment, in addition to the matter specially referred the auditor shall have power to hear demurrers, allow amendments, and pass upon all questions of law and fact." This court is clearly of the opinion that under the terms of the submission, such as in this case, as well as under the law itself, it is the right of the auditor to grant a nonsuit in all cases where "the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover." Civil Code (1910), § 5942.

2. This court is also of the opinion that the evidence in this case is ample to support the findings of the auditor "that the officers of the Avera Loan & Investment Company had knowledge of acts indicating dishonesty on the part of George Beverly Walker before the bond was renewed for the period in which the liability

is claimed," and that "the Avera Loan & Investment Company failed to give the National Surety Company notice within the ten days, as provided in the bond, of acts indicating dishonesty on the part of George Beverly Walker." The bond in this case indemnifies the Avera Company against any loss sustained "by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion, or abstraction on the part of George Beverly Walker, employee as attorney in collecting notes and accounts at Macon, Georgia, in the employer's service, committed after the 1st day of February, 1914, and before the termination of this bond. Provided, that the employer shall not have had at the date hereof any knowledge of the employee having been guilty of any act of personal dishonesty, in any position in the employer's service, or in the service of any other person, firm, or corporation, and shall have notified the surety (at the surety's expense) by telegraph and registered letter, giving all known particulars, addressed to its home office, No. 115 Broadway, New York City, within ten days after becoming aware of any such loss." The contract between the Avera Loan and Investment Company and Walker provided that Walker should furnish good and sufficient security in the sum of $4,000, payable to said company "for the prompt and honest remittance of all funds, less his fees, collected by him."

A contract between principal and agent for the handling of money, especially when that agent is an attorney at law, should be carried out in the strictest good faith and on principles of absolute honesty. Any unauthorized use of the funds of the principal by the agent for his personal benefit for any length of time, however short, even if with the idea that the money will be returned, is a violation of his obligation to his principal. In *Orr* v. *State*, 6 *Ga. App.* 629 (65 S. E. 582), Judge Russell said: "The defendant was convicted of embezzlement. His alleged criminal transactions ran through a long number of years. There are several instances clearly proved by the testimony, and not satisfactorily explained by the defendant, in which he took and used, for his own purposes, and in an unwarranted manner, money belonging to the bank. The defendant probably expected when he used this money that he would repay it (and it may be that the jury was authorized to find that after the defendant severed his connection with the bank he did repay it by means of a settlement made); but, legally speak-

ing, he was guilty of embezzlement. Indeed no impartial unbiased legalist can read the testimony and the statement of the defendant without being convinced of two propositions: (1) that the defendant was guilty of embezzlement; and (2) that he probably did not fully realize, at the time the crime was being committed, that he was violating the law in this respect; and yet the two things are not inconsistent. While to constitute the offense of embezzlement there must be a criminal intent, still, where the money of the principal is entrusted to an agent and is knowingly used by the agent in violation of his duty, it is none the less embezzlement because he intended at the time to restore it. Metropolitan Life Ins. Co. *v.* Miller, 114 Ky. 754 (71 S. W. 921). There cannot, of course, be embezzlement where there is no intent to defraud; but there are cases where one uses the money of another which he has no right to use, and thereby he appropriates it to his own *use;* from which a fraudulent intent will be inferred, and the act be branded as embezzlement. People *v.* Wadsworth, 63 Mich. 500. Though there is much in the record to palliate the defendant's offense, still, under the law as it is written, he is clearly guilty. *Jackson* v. *State, 76 Ga.* 551." In *Mangham* v. *State,* 11 *Ga. App.* 427 (75 S. E. 512), this court held: "To constitute the offense of embezzlement there must be both a wrongful conversion and a fraudulent intent; but where money of the principal - is knowingly used by the agent for his own private benefit, and in violation of his duty to the principal, it is none the less embezzlement because at the time of the unlawful use the agent intended subsequently to restore the money. An officer or agent of a corporation cannot take money of the corporation, entrusted to him or. in his possession by virtue of his official relation or agency, and use it temporarily for his private benefit and avoid criminal responsibility by calling it a loan. The law calls such a transaction a wrongful conversion, from which a fraudulent intent can be inferred." See also *Dixon* v. *State,* 16 *Ga. App.* 290 (85 S. E. 257).

Did Walker make prompt and "honest remittance of all funds less his fees collected by him?" Let it be carried in mind that the bond sued on was given in 1914, and had endorsed thereon, "This bond is continuous in form and remains in effect for an indefinite period by payment of premium when due." The

premiums were paid and the bond kept in force during the years 1915 and 1916. As early as May, 1915, a check given by Walker for a collection he had made was returned by the bank to the Avera Company unpaid. This happened again in June, 1915, and several times during each of the years 1915 and 1916. To cover some of these dishonored checks Walker sometimes gave checks or money or both, and on some of these amounts, where checks were returned, partial payments only were made, and some of these amounts have never been paid and are sued for in this case. It is true that it was at times agreed between Denton, the President of the Avera Company, and Walker that the amount due on certain collections should be charged to Walker's account. *However, these agreements were always made after the checks had been presented at the bank on which they were drawn and payment had been refused.* Did not these acts show a "wrongful conversion" of the funds of the Avera Company? It is useless to burden the record with specific instances of these transactions. That a number of them were acts of personal dishonesty is shown by the petition itself; paragraph 7 of which, after alleging that Walker was indebted to plaintiff for money collected on notes and accounts entrusted to him to the amount of $3,438.52, which he had failed and refused to pay over to petitioner on demand, alleges that "petitioner sustained a loss to said amount by reason of acts of personal dishonesty, embezzlement, and wrongful conversion on the part of said Beverly Walker." Did the Avera Company have knowledge of these "acts of personal dishonesty?" Mrs. Reynolds, who was secretary and treasurer as well as bookkeeper of the Avera Company and who handled these transactions, necessarily knew of them. To questions asked her on the trial she answered as follows: Q. "You knew that Mr. Walker was failing to pay over to the Avera Loan & Investment Company money which he reported he collected?" A. "Well, he didn't pay it over." Q. "And you knew it in 1915?" A. "Yes, sir, but, as I said, it was always understood between him and Mr. Denton, and I was instructed to charge it to him. That was understood after he failed to pay the money and not before." Q. "Was he using money which he collected, without paying it over?" A. "Well, I think he used some of the money, but I didn't think at that time that he used it intending to hold it himself and not make it good. I thought that in 1915." Denton, the

president, also knew of some of these transactions, and yet, with the officers possessed of this knowledge and the bond providing that the Avera Company should give to the surety company notice of any act of "personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion, or abstraction" on the part of Walker, "within ten days after becoming aware of any such act or facts indicating any such acts or any such loss," it gave no notice to the surety company until October 23, 1916, at which time it received information that Walker had collected a certain sum from L. W. Wilcox several months before, and had not remitted to cover the collection. It then notified the surety company. As this court sees the evidence, it is clear that the Avera Company was aware of facts indicating "personal dishonesty" on the part of Walker as early as the spring of 1915, long before the bond was renewed for 1916, and should have even then notified the surety company.

The foregoing shows that this court is of the opinion that the judge of the superior court properly refused to recommit the case to the auditor, that he did not err in overruling the exceptions either of law or of fact, and that he properly granted a nonsuit in favor of the National Surety Company.

The nonsuit as to Walker was properly granted. Evidently it was the intention of the plaintiff to sue on the bond alone; and, as there is in the bond no covenant or promise of liability of Walker to the Avera Company, a recovery on the bond could not be sustained. This construction of the petition is borne out by the fact that the amount of recovery sought is the exact amount of the penal sum named in the bond, whereas the total loss alleged in the petition is considerably in excess of this amount. In addition the allegations in the petition are not sufficient to support an action for fraud and deceit or for money had and received.

3. (a) The judge properly taxed the auditor's fee against the Avera Loan & Investment Company. Civil Code (1910), § 5980. See also §§ 5148, 5423; *Moore* v. *Dickenson,* 117 *Ga.* 887 (45 S. E. 241); *Fitzpatrick* v. *McGregor,* 133 *Ga.* 344 (4) (65 S. E. 859, 25 L. R. A. (N. S.) 50).

(b) The word "involving," as used in this statute, means the amount for which suit is brought. In this case this is $4,000 principal, interest thereon, $1,000 damages, and $1,000 attorney's fees. Should counsel and auditor think the statute does not make a

sufficiently liberal provision for the auditor in any particular case, the Civil Code of 1910, § 5149, provides how the fee may be fixed in advance. *Central of Ga. Ry. Co.* v. *Central Trust Co., 135 Ga.* 474 (5) (69 S. E. 708). The judge of the superior court is hereby directed so to modify his judgment as to the amount of the auditor's fee as to conform to the provision of section 5148 of the code as construed above.

*Judgment affirmed with direction. Broyles, C. J., and Luke, J., concur.*